# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

HANE CYPRESS MCLEAISH,

    Plaintiff,

v.                              CASE NO. 3:25-cv-279-MCR-ZCB

THE SCHOOL DISTRICT OF
ESCAMBIA COUNTY, et al.,

    Defendant.

_____/

## ORDER

Plaintiff Hane Cypress McLeaish has sued the School District of Escambia County, Florida (the "Board"[1]) and several individuals in their official capacities[2] for sex and gender discrimination, a hostile work environment, and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq*.; and the Florida Civil Rights Act, Fla. Stat. § 760.01 *et seq*. ("FCRA").    McLeaish's lawsuit also includes

---

[1] As a threshold matter, Defendants move to dismiss the School District of Escambia County as improperly named, arguing that the School Board of Escambia County, Florida, is the proper entity to be sued.  McLeaish agrees "that Fla. Stat. § 1001.40 is dispositive."  ECF No. 37 at 2.  The Court will grant leave to substitute the correct entity and will refer to the Defendant as the "Board" throughout this Order.  *See Abrams-Jackson v. Avossa*, 2017 WL 1153895, at *2 (S.D. Fla. Mar. 28, 2017) (holding that, under statutes including Fla. Stat. § 1001.40, the proper Defendant constituted the school board not the school district).

[2] Specifically, McLeaish names, in their official capacities, Elizabeth Greenberg, Principal of Pine Meadows Elementary School; Dr. Timothy Smith, Superintendent; Keith Leonard, Assistant Superintendent; and the members of the School Board of Escambia County:  Kevin Adams, Paul Fesko, Dr. Laura Edler, Patty Hightower, and Bill Slayton.

constitutional claims for violation of McLeaish's equal protection and free speech rights under the First and Fourteenth Amendments of the United States Constitution. *See* 42 U.S.C. § 1983. The Defendants moved to dismiss the Amended Complaint based on McLeaish's failure to exhaust administrative remedies and failure to state a claim, ECF No. 30, *see* Fed. R. Civ. P. 12(b)(6), and McLeaish responded in opposition, ECF No. 37. With the benefit of oral argument, and after thorough consideration, Defendants' motion is granted with leave to amend in part.

## I. Background[3]

McLeaish identifies as a transgender non-binary individual and uses the title "Mx."[4] In August 2020, McLeaish was hired as a substitute teacher and was initially assigned to work at Weiss Elementary School in Pensacola, Florida. On the first day, the Principal and Vice Principal instructed McLeaish that the title "Mx." could not be used on campus. Instead, McLeaish had to use the title "coach" or simply their last name, although cisgender teachers were not forbidden from using a title or

---

[3] The facts are taken from the Amended Complaint, ECF No. 6, and recited here in the light most favorable to McLeaish, but legal conclusions stated within the pleading are not accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court limits its consideration to well-pleaded factual allegations, and documents that are referenced in and central to the complaint and matters judicially noticed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280 (11th Cir. 1999).

[4] As explained in the Amended Complaint, non-binary individuals fall under the "umbrella" of transgender individuals: both have a gender identity different from that assigned at birth. However, transgender individuals identify as male or female whereas non-binary individuals identify as a mix of both, neither, or somewhere in-between on the gender spectrum. Non-binary individuals like McLeaish use the title "Mx." and the pronouns they/them/their. McLeaish formally changed their name from Hannah Erin McLeaish to Hane Cypress McLeaish in May 2021.

required to refer to themselves as "coach."  McLeaish complained and interviewed the same day for a long-term position at a different school, Global Learning Academy in Pensacola, Florida.  McLeaish started there on October 20, 2020, and was allowed to use preferred pronouns and titles until a student expressed confusion over McLeaish's pronouns in November.

At that point, McLeaish was precluded from using preferred pronouns at the school and was informed that the reference could confuse students.  McLeaish then began receiving only administrative duties and was not allowed to finish their long-term substitute teaching position.  McLeaish complained to the Director of Personnel Services and in February 2021 filed a Charge of Discrimination with the Florida Commission on Human Relations ("FCHR") and the United States Equal Opportunity Commission ("EEOC") based on their sex/gender identity.  A no cause determination was issued on the Charge of Discrimination.[5]

In June 2022, McLeaish sought and was offered a full-time position as an art teacher at Pine Meadows Elementary School in Pensacola and immediately sought clarification on the use of their preferred title and pronouns.  In July, McLeaish received an email stating in relevant part: "HR respects and accepts your request to be addressed and introduced as Mx. McLeaish. . . . You will still need to have the

---

[5] Agency records show that the FCHR issued a no cause determination on August 9, 2021, and the EEOC dismissed the charge before it in September 2021.

conversation with the Pine Meadows Principal in addition to any other schools you are assigned so they may be aware." Following the required conversation with Pine Meadows' Principal, McLeaish started introducing themselves in class using the title "Mx." and briefly explained to students how to pronounce this title. One week later, after a class on August 17, a student asked McLeaish whether they were transgender, and McLeaish responded "I am." On August 24, McLeaish was escorted out of the classroom, and they were informed of being investigated for inappropriate discussions with students and that their pay would be suspended. McLeaish refused to resign although given the opportunity, and the Board voted in favor of terminating McLeaish's employment.

McLeaish filed a second charge of discrimination in 2022 based on the suspension and termination.[6] McLeaish timely filed this suit on March 19, 2025.

## II.    Discussion

A complaint that fails to state a claim is subject to dismissal under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To state a claim, the complaint must set out sufficient factual matter that, taken as true, makes out a facially plausible claim.

---

[6] The Amended Complaint did not expressly reference the 2022 Charge but alleges that all administrative prerequisites and conditions precedent were met. ECF No. 6 at ¶23. The Charge is therefore central to the claims and its authenticity has not been challenged for purposes of the doctrine of incorporation, *see Day*, 400 F.3d at 1275-76; and the Court also properly takes judicial notice of it, *see Ellison v. Postmaster Gen., U.S. Postal Serv.*, 2022 WL 4726121, at *6-7 (11th Cir. Oct. 3, 2022) (affirming consideration of documents attached to motion to dismiss based on taking judicial notice).

*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (facial plausibility arises "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). "Threadbare recitals of the elements," conclusory statements, labels or mere legal conclusions are not entitled to a presumption of truth and insufficient to state a claim. *Id.*; *see also Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004).

### A.    Title VII & FCRA: Administrative Exhaustion

"[T]o bring suit for discrimination under the FCRA [or] Title VII," the "plaintiff first must exhaust [their] administrative remedies." *Poulsen v. Publix Super Markets, Inc.*, 302 F. App'x 906, 907 (11th Cir. 2008); 42 U.S.C. § 2000e-5 (Title VII's exhaustion requirements); Fla. Stat. § 760.11 (FCRA's exhaustion requirements). The exhaustion process begins with filing a charge of discrimination. *See Harris v. Public Health Trust of Miami-Date Cnty.*, 82 F.4th 1296, 1302-03 (11th Cir. 2023). Any Title VII or FCRA judicial claim must comply with the required processes and timelines for exhaustion and reasonably grow out of an administrative charge. *See Horace v. ARIA*, 2024 WL 1174398, at *2-3 (11th Cir. Mar. 19, 2024). The FCHR process requires a claimant to "request an administrative hearing" within 35 days of the FCRA's determination, *Davis v. Bob Evans Farms, LLC*, 649 F. App'x 869, 871-72 (11th Cir. 2016) (internal citations and quotations omitted); and claims under Title VII must be filed within 90 days of receiving the

EEOC's notice of right to sue or dismissal, *Bryant v. U.S. Steel Corp.*, 428 F. App'x 895, 897 (11th Cir. 2011).

McLeaish asserts Title VII and FCRA claims (within Counts I-VII) for hostile work environment, disparate impact, disparate treatment, and retaliation. The Amended Complaint incorporates all allegations into every count and does not clarify whether the claims are based on the 2021 Charge or the 2022 Charge. Defendants argue that: (1) to the extent any Title VII and FCRA claim is based on the 2021 Charge, it is unexhausted since McLeaish neither timely sought review of the FCHR's no cause determination nor timely filed suit after the EEOC issued a notice of right to sue; and (2) as to the 2022 Charge, it did not reasonably give rise to, and therefore did not exhaust, claims for hostile work environment and disparate impact.[7]

McLeaish bears the burden of proving exhaustion because Defendants specifically dispute it. *See Myers v. Central Fla. Invs., Inc.*, 592 F.3d 1201, 1225 (11th Cir. 2010). Regarding the 2021 Charge, McLeaish does not contest their failure to timely request an administrative hearing or to file suit within the requisite time after receiving the EEOC notice. Moreover, in response and at oral argument counsel agreed that the 2021 Charge was unexhausted and the claims of sex

---

[7] Defendants have not moved to dismiss McLeaish's claims for disparate treatment and retaliation as unexhausted to the extent based on the 2022 Charge.

discrimination and harassment were instead based on the 2022 Charge, with earlier facts to serve as background only, to show continuing harassment and also to demonstrate protected activity for purposes of McLeaish's retaliation claims.[8]

Accordingly, to the extent any Title VII or FCRA claim can be construed as directly based on the 2021 Administrative Charge, it is dismissed for lack of exhaustion. *See Davis*, 649 F. App'x at 871-74 (dismissing FCRA claims as unexhausted for not requesting an administrative hearing within 35 days); *see also Douphin v. Kushner Mgmt.*, 2011 WL 253964, at *1-2 (M.D. Fla. Jan. 26, 2011) (same); *Bryant*, 428 F. App'x at 897 (dismissal of Title VII claims is "appropriate when the plaintiff fails to file" suit on such claims within the 90-day period (internal citations omitted)).

Regarding the 2022 Administrative Charge, Defendants argue that neither a hostile work environment nor disparate impact claim reasonably arose from this charge. As stated above, a plaintiff's judicial complaint may only assert claims "reasonably expected to grow out of their charge of discrimination." *Ramon v. AT & T Broadband*, 195 F. App'x 860, 865 (11th Cir. 2006) (quoting *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1280 (11th Cir. 2004)). But a charge's scope

---

[8] The Court considers the 2021 Charge, the corresponding FCHR determination and EEOC notice of right to sue, and the 2022 Charge based on the doctrine of incorporation and judicial notice, as previously indicated, and has not considered any other documents attached to the motion to dismiss.

"should not be strictly interpreted," *id.*, and "judicial claims are allowed if they "amplify, clarify or more clearly focus" the allegations in the charge, *Gregory*, 355 F.3d at 1279 (internal citations omitted).  Courts look to whether the charge contains "corresponding factual allegations" on the claim at-issue in determining if it reasonably arises from the charge.  *See Litman v. Sec'y, of the Navy*, 703 F. App'x 766, 772 (11th Cir. 2017).

A hostile work environment claim—by its "very nature"—involves acts "different in kind" than "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire;" it addresses acts such as repeated "discriminatory intimidation, ridicule, and insult," which "cumulative[ly]" make the workplace *itself* hostile.  *See McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).  In relevant part, McLeaish's 2022 Charge states:

> Prior to taking up my appointment [as an art teacher], I spoke to Caroline Gray, an Employee Services Coordinator for the School District to clarify the way in which I would be addressed by students and the pronouns that would be used to refer to me.  Ms. Gray wrote [back] . . . that "HR respects and accepts your request to be addressed and introduced as Mx. McLeaish." . . . I followed the instructions that I had received from Ms. Gray when introducing myself to the students in my class.  After class was over, one student asked me whether I was a boy or a girl and I responded that I was a mix.  Within a few days I was notified . . . that disciplinary action was being considered against me for misconduct based on the complaints of parents that I had violated HB 1557 when I introduced myself as Mx. McLeaish.  I was . . . terminated[,] . . . my "misconduct" was reported[,] . . . [and I was]

> notified [of an] investigat[ion] for "alleged misconduct" . . . when I
> allegedly "headed an unapproved discussion with students[.]"

ECF. 30-2 at 2. Without question, the charge only concerns discrete acts (termination and disciplinary investigation) and does not "reasonably point[] to the kind of pervasive and oppressive conditions" that commonly underly a hostile work environment claim. *Ramon*, 195 F. App'x at 864, 866 (finding charge involving incident of losing pay and disparities in pay did not give rise to a hostile work environment claim); *Green v. Elixir Indus., Inc.*, 152 F. App'x 838, 840-41 (11th Cir. 2005) (finding charge alleging employment termination for violating attendance policy, with whites receiving different treatment, did not give rise to a hostile work environment claim); *Jordan v. Cobb Cnty. Sch. Dist.*, 2022 WL 22354848, at *6-7 (N.D. Ga. Aug. 15, 2022) (finding charge concerning a September 2019 suspension, disciplinary proceedings, and a October 2020 suspension, did not give rise to a hostile work environment claim, rejecting the plaintiff's argument that mere overlap between these discrete acts "with what he [] views to be his hostile work environment claim" "ignores the principle" that "discrete acts" cannot, alone, "constitute a hostile work environment claim for exhaustion purposes"). Thus, the discrete acts (disciplinary investigation and termination) stated within the 2022

Charge did not provide any facts that could give rise to a hostile work environment claim, and accordingly these claims will be dismissed.[9]

McLeaish's disparate impact claims fare no better. Unlike hostile work environment claims or other claims for discrimination, disparate impact claims challenge neutral employment practices that bear "more harshly on one group than another." *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (internal citations omitted); *see also E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1274 (11th Cir. 2000) ("disparate impact theory prohibits *neutral* employment practices" that "adverse[ly] and "disproportionate[ly] impact [] a statutorily-protected group"). "[C]ourts must be careful to distinguish between" claims for "disparate impact" and claims for "disparate treatment." *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016) (highlighting these claims are "not interchangeable," and discussing that disparate treatment concerns intentional and individualized

---

[9] In opposing dismissal, McLeaish relies on the continuing violation doctrine. This doctrine addresses considering acts outside of the limitations period "if the defendant[] . . . violate[s] a plaintiff's rights on a repeated or ongoing basis." *Jiminez v. U.S. Att'y Gen.*, 146 F.4th 972, 992, 994 n.6 (11th Cir. 2025) (assuming that a hostile work environment claim was exhausted and finding that, in any event, the untimely acts were not "sufficiently related" to the charge to form a continuing violation and grow out of the charge). As the 2022 Charge did not give rise to a hostile work environment claim, this doctrine has no present application. Moreover, McLeaish cites no caselaw showing that acts not mentioned in a charge, occurring substantially earlier, can be considered in determining if the charge gives rise to a hostile work environment claim; and even if such acts could be considered, they occurred at a separate school in Escambia County with different supervisors. *Id.* at 994-95 ("commonalities" like the employee's identity and their employer's identity "will always exist" and "do not justify treating separate acts as part of the same claim." (internal citations omitted)).

discrimination, but disparate impact concerns class-wide discrimination resulting from applying a facially neutral policy).

According to McLeaish, the disparate impact claim reasonably grew out of the 2022 Charge because it included the Board's suspension and termination of McLeaish for violating HB 1557, a neutral statute, and engaging in an "unapproved discussion" with a student.[10]   In relevant part, the Charge states:

> I was notified . . . that disciplinary action was being considered against me for misconduct based on the complaints of parents that I had violated HB 1557 when I introduced myself as Mx. McLeaish.[11]   I was . . . terminated[,] . . . my "misconduct" was reported[,] . . . [and I was] investigat[ed] [for] . . . allegedly "head[ing] an unapproved discussion with students[.]"

ECF 30-2 at 2.  Because the charge focused on individualized treatment, divorced from any allegations concerning class-wide discrimination (or even that anyone else had been treated differently), it did not give rise to a disparate impact claim.  *See Burgis v. New York City Dep't of Sanitation*, 798 F.3d 63, 71 (2d Cir. 2015) (finding charge concerning racial discrimination in employment practices did not give rise to a disparate impact claim because it concerned "individualized disparate treatment [] not reasonably related" to a "disparate impact claim"); *see also Abdus-Shahid v.*

---

[10] HB 1557 was codified in Fla. Stat. § 1001.42(8)(c)(3).  *See infra* Note 15 (discussing the text Fla. Stat. § 1001.42(8)(c)(3)).

[11] As an aside, while in the 2022 Charge, McLeaish asserted that the alleged violation leading to termination included introducing themselves using the title "Mx," that is not alleged in the Amended Complaint as the basis for the adverse action.

*Mayor and City Council of Baltimore*, 674 F. App'x 267, 274-76 (4th Cir. 2017) (finding charge concerning insurance denial based on religious discrimination did not give rise to a disparate impact claim because it omitted allegations showing a protected class had been "disproportionally impacted" and instead "sound[ed]" in "disparate treatment or intentional discrimination"); *Fuller v. Wal-Mart Stores, Inc.*, 2013 WL 3357736, at *5-7 (N.D. Ala. June 28, 2013) (finding charge concerning termination pursuant to employment policy did not give rise to a disparate impact claim, in relevant part, because it concerned purposeful application of the policy to that employee rather than unintentional and even application of the policy on a class-wide basis). Accordingly, the discrete, individualized acts of purported discrimination alleged in the 2022 Charge did not reasonably give rise to any disparate impact claim.

## B.    Title VII & FCRA:  Sex Discrimination & Retaliation

Title VII and the FCRA prohibit an employer from intentionally discriminating with respect to the terms and conditions of employment because of the individual's sex and also from retaliating against an employee for engaging in protected conduct by opposing an unlawful employment practice or making a charge of discrimination.[12]  *See* 42 U.S.C. § 2000e *et seq*.; Fla Stat. § 760.01, *et seq*.

---

[12] Title VII and FCRA claims are analyzed under the same standard and therefore do not need to be considered separately.  *See Alvarez v. Royal Atl. Devs., Inc*., 610 F.3d 1253, 1271 (11th Cir.

Defendants argue that McLeaish's Title VII and FCRA claims alleging sex discrimination (Counts I, II, and portions of VII) and retaliation (Counts V and VI) both fail to state a claim.  The Court agrees.

To state claim for discrimination under Title VII, the complaint must provide "enough factual matter (taken as true) to suggest intentional discrimination" based on a protected characteristic.  *See Davis v. Coca-Cola Bottling Co. Consol.,* 516 F.3d 955, 981-83 (11th Cir. 2008) (internal citations omitted), *abrogated on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Title VII facially prohibits discrimination based on sex.  *See* 42 U.S.C. § 2000e–2.  The Supreme Court has concluded that, as a necessary consequence of that legislative language, "[a]n employer who fires an individual merely for being gay or transgender defies the law."  *Bostock v. Clayton Cnty.*, 590 U.S. 644, 683 (2020).  Although the Amended Complaint alleges that the Board discriminated against McLeaish based on "sex/gender" identity, albeit in a conclusory manner, there is no allegation of McLeaish's sex.  This is fatal to McLeaish's sex discrimination claim.  *See Lange v. House Cnty., Ga.*, 152 F.4th 1245, 1252 (11th Cir. 2025) ("Neither the Supreme Court nor this Court has held that transgender status is separately protected under Title VII apart from sex.  And *Bostock* did not add transgender status, as a category, to the list of classes protected

---

2010); *see also Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) (noting Florida courts apply Title VII decisions when considering claims under the FCRA).

by Title VII."); *see also Webb v. Horizon Staffing*, 2018 WL 11222669, at *2 (N.D. Ga. May 2, 2018) (dismissing claims asserting discrimination based on race, sex and religion on finding "no allegations in Plaintiff's complaint indicating what his race, sex, or religion are"); *Allen v. New Jersey*, 2009 WL 3765991, at *2 (D. N.J. Nov. 10, 2009) (same).[13]    Moreover, the facts alleged do not plausibly support the conclusory claim that McLeaish was suspended or terminated based on transgender status.  The Amended Complaint asserts that the suspension and termination were "based on parent complaints" and misconduct described as "inappropriate discussions with students." ECF No. 6 at 13.  There is nothing else alleged.  As pled, the allegations are not within the scope of *Bostock*.  The claims thus will be dismissed with leave to amend one final time.

Title VII also prohibits retaliation.  42 U.S.C. § 2000e–3.  To state a claim for retaliation, a complaint must allege facts showing that: (1) the plaintiff engaged in activity protected under the statute; (2) "suffered a materially adverse action;" and (3) there exists "a causal connection between the protected activity and the adverse action." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1211 (11th Cir. 2013).  Causation requires plausible factual allegations showing "that the protected activity and the

---

[13] Defendants' arguments under *Pettway v. Am. Cast Iron Pipe, Co.*, 494 F.2d 211 (5th Cir. 1974) (finding that good-faith compliance with a state statute constitutes a "special circumstance" precluding receipt of certain monetary damages) may be raised again, if necessary, in response to any subsequently filed complaint.

adverse action were not wholly unrelated." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021) (summary judgment context) (quoting *Gogel v. Kia Motors Mfg. of Ga., Inc*., 967 F.3d 1121, 1135 (11th Cir. 2020) (*en banc*)); *see also Gilliam v. U.S. Dep't of Veterans Affairs*, 822 F. App'x 985, 990 (11th Cir. 2020) (applying the "not completely unrelated" standard at the motion to dismiss stage). Where a plaintiff relies on mere temporal proximity for causation, without more, that temporal link must be "very close." *Tolar*, 997 F.3d at 1294 (also noting, at the summary judgment stage, that the plaintiff must meet the demanding "but for" test of causation); *see also Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (concluding a three-month gap was too attenuated to show a causal link for retaliation).

McLeaish alleges that the Board's "intense scrutiny" and restrictions on referencing gender identity, as well as acts of suspending and terminating McLeaish from a position at Pine Meadows Elementary in 2022, constituted retaliation for McLeaish having previously filed a charge of discrimination in February 2021 (related to treatment while working at a different school and with a different principal). Defendants argue that McLeaish has failed to plausibly allege a causal link based on temporal proximity because the adverse actions alleged occurred over a year after the protected activity. The Court agrees. As noted, in the Eleventh Circuit, close means "very close." *Tolar*, 997 F.3d at 1294; *see e.g., Walker v. Sec'y,*

*U.S. Dep't of Air Force*, 518 F. App'x 626, 628 (11th Cir. 2013) (finding a three-month interval insufficient to establish causation for retaliation claim); *Thomas*, 506 F.3d at 1364 (same).

McLeaish argues that the claims survive based on the first opportunity doctrine—which recognizes that a significant time gap can still be sufficient for causation if "the adverse action was the first opportunity for the employer to retaliate." *Ward v. United States Parcel Serv.*, 580 F. App'x 735, 739 (11th Cir. 2014). According to McLeaish, the intense scrutiny, suspension, and termination decisions that allegedly took place in mid-August and September 2022 presented the "first opportunity" for the Board to retaliate against McLeaish for filing the 2021 Charge because McLeaish first "sought to reenter into an employment relationship in August 2022." ECF No. 37 at 17. The Court disagrees and finds this argument disingenuous in light of the facts alleged. According to the Amended Complaint, in June of 2022, McLeaish "applied for and w[as] offered" full-time employment at Pine Meadows Elementary. ECF No. 6 ¶ 41. There was no retaliation at this first opportunity, and to the contrary, McLeaish was rehired. *See generally Templeton v. First Tennessee Bank, N.A.*, 424 F. App'x 249, 251 (4th Cir. 2011) (finding the first time to retaliate was when the employer had the opportunity to rehire the employee); *see Dale v. Wynne*, 497 F. Supp. 2d 1337, 1346 (M.D. Ala. 2007) (adverse actions that began when the plaintiff first returned to work were done at the first opportunity

to retaliate); *see also Marques v. Fulton Cnty. Sch. Dist.*, 2024 WL 4545069, at *6 (N.D. Ga. Mar. 26, 2024) (finding causation for retaliation claim implausibly pled where the "first opportunity" to retaliate was when the plaintiff renewed her employment contract, months before the adverse action of her September termination); *Smith v. City of Birmingham*, 2019 WL 4600056, at *8 (N.D. Ala. Sep. 23, 2019) (finding (1) the first opportunity to retaliate for reporting harassment (June 22, 2016) or filing an EEOC charge (July 8, 2016) was the date of rehire (August 8, 2016); (2) finding the plaintiff's purported violation of a policy months later (in 2017) did not constitute the first opportunity to retaliate; and (3) since nothing else showed causation, the retaliation claim failed). Here, at least as pled, no other factual allegations support a plausible inference that any alleged restrictions or McLeaish's suspension and termination were linked to the 2021 protected activity.[14] Thus, McLeaish's retaliation claims must be dismissed with prejudice.

## C.   Constitutional Claims

McLeaish asserts that Defendants' conduct violated the First and Fourteenth Amendments to the United States Constitution. As an initial matter, Defendants correctly note that the official capacity constitutional claims in Count VIII (sex

---

[14] Moreover, there are no fact-based allegations that substantiate the conclusory assertion of "intense scrutiny" or "restrictions," and the only other potentially protected activity was that McLeaish complained to the Human Resources Personnel for Escambia County in 2021, which was even *before* the formal charge filed in 2021.

discrimination) and Count X (free speech) are effectively claims against the Board itself.  The Court agrees and will construe them in that manner.  *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (discussing that under § 1983 "suits against a municipal officer [] in his official capacity and direct suits against municipalities are functionally equivalent").  The individually named Defendants therefore will be dismissed.

### 1.    Fourteenth Amendment Claims

Defendants argue that McLeaish's Fourteenth Amendment equal protection sex discrimination claims fail to state a claim.  Specifically, McLeaish alleges that the Board suspended and terminated them for sex discrimination based on gender identity for being a transgender non-binary individual (Count VIII) and that the Board's application of Fla. Stat. § 1001.42(8)(c)(3)[15] to suspend and terminate McLeaish discriminated on the basis of sex (Count X).  The law recognizes only two types of sex/gender identity claims: (1) sex stereotyping based on gender non-conformity, *see Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), and (2) membership in a suspect/quasi-suspect class (*e.g.*, biological sex), *see Adams by and*

---

[15] The statute provides: "Classroom instruction by school personnel or third parties on sexual orientation or gender identity may not occur in prekindergarten through grade 8, except when required by ss. 1003.42(2)(o)3[] and 1003.46.  If such instruction is provided in grades 9 through 12, the instruction must be age-appropriate or developmentally appropriate for students in accordance with state standards." Fla. Stat. § 1001.42(8)(c)(3).  McLeaish has not challenged the statute on its face.

*through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 803-08 (11th Cir. 2022). The Amended Complaint does not plausibly assert either type of claim. The purported gender identity claim in Count VIII wholly fails to allege stereotyping based on gender-nonconformity, and, while Count X alleges discrimination "based on sex," it does so only in a conclusory manner with no facts to plausibly support a claim that the statute was applied on the basis of McLeaish's biological sex. Accordingly, McLeaish will be afforded a final opportunity to allege the specific nature of the equal protection claims. Any amendment must state clearly and unequivocally the basis of the claim.

### 2.    First Amendment Claim

According to Count IX, Defendants violated McLeaish's First Amendment free speech rights by applying Fla. Stat. § 1001.42(8)(c)(3) in a manner that precluded McLeaish from affirming their gender identity in response to a student's question after a class or otherwise describing McLeaish's gender identity to students. Defendants move to dismiss, arguing McLeaish has failed to state a claim. The Court agrees.[16]

---

[16] Defendants also move to dismiss for lack of standing, limited to McLeaish's request for injunctive relief. Because the Court concludes that McLeaish will need to replead this count in order to state a claim, the Court need not, and does not, reach the issue of standing to pursue injunctive relief at this time.

The Court begins with the unremarkable proposition that "a teacher's right to speak is not without limits." *Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286, 1289 (11th Cir. 2025). As a public employee, a teacher may invoke the safeguards of the First Amendment if speaking "as a private citizen on matters of public concern." *Fernandez v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 898 F.3d 1324, 1329 (11th Cir. 2018) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). And if so, then the public employee's free speech rights turn on "whether the relevant government entity had an adequate justification for treating that employee differently from any other member of the general public." *Id.* (quoting *Garcetti*, 547 U.S. at 418).

McLeaish alleges having introduced themselves to students as Mx. Hane and describing briefly how to pronounce that title on August 10, 2022, and that "after a class" on August 17, 2022, when a student asked whether McLeaish was transgender, McLeaish responded, "I am." ECF No. 6 at 12-13. McLeaish alleges that answering a student's question was speech protected by the First Amendment because it was McLeaish's "own speech and message" and "McLeaish has free speech rights while at work, including in the classroom." *Id.* at 35. The Eleventh Circuit in *Wood*, however, concluded to the contrary in a similar but narrow situation where a teacher asserted she was prevented from using her preferred honorific and pronouns within the classroom. The court there found that this type of expression by a teacher while interacting with students within the classroom and within the scope of the teacher's

duties is government speech.  142 F.4th 1290-91 (stating teachers addressing students "within the four walls of a classroom" are "unquestionably acting pursuant to [their] official duties") (internal citations and quotations omitted); *see also id.* ("When a public-school teacher speaks in the course of performing [their] job—*i.e.*, "speaking to [the] class in [the] classroom during class hours, [the teacher] does so pursuant to [their] official duties and therefore speaks as a government employee." (internal citation and quotations omitted)).  Based on *Wood*, the current allegation, simply that the statement occurred "after a class," is insufficient to plausibly allege that McLeaish was speaking as a private citizen.  A final opportunity to amend will be granted.[17]

Accordingly:

1.    Defendants' Motion to Dismiss, ECF No. 30, is **GRANTED** with leave to replead, except as to any claims based on the 2021 Charge of Discrimination and all claims of hostile work environment and disparate impact, which are barred by administrative exhaustion and dismissed with prejudice; and except as to the retaliation claims, which are dismissed with prejudice.

---

[17] McLeaish's counsel conceded at oral argument that they would replead a First Amendment claim based on the purported "after class" conduct—with counsel also appearing to agree they had not adequately alleged the relevant conduct.

2.   The individually named Defendants are dismissed.  The Clerk is directed to substitute the School Board of Escambia County as the sole named Defendant, and this should be reflected as well on all future pleadings.

3.   The Plaintiff has 14 days to file an amended complaint.  Defendant has 14 days to answer or otherwise respond.

**DONE AND ORDERED** this 8th day of December 2025

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**